IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARIO LEFLORE,

          Petitioner,                      ORDER

    v.                                                        16-cv-822-wmc

MICHAEL DITTMAN, Warden,
Columbia Correctional Institution,

          Respondent.

---

Mario LeFlore, an inmate at Columbia Correctional Institution, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and has paid the $5 filing fee. LeFlore challenges his April 25, 2008 judgment of conviction in the Circuit Court for Dane County for burglary, armed robbery, kidnapping, false imprisonment, and two counts of first degree sexual assault. The petition, which LeFlore has supported with a brief and numerous exhibits (dkt. #2), is before the court for preliminary review pursuant to Rule 4 of the Rules Governing Section 2254 Cases. Rule 4 provides that when conducting this review,

> [i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

During the court's initial review of habeas petitions, it looks to see whether the

1

petition is timely, whether the petitioner sets forth cognizable constitutional or federal law claims, and whether the petitioner has exhausted available state remedies. Further, the petition must cross "some threshold of plausibility" before the state will be required to answer. *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003); *Dellenbach v. Hanks*, 76 F.3d 820, 822 (7th Cir. 1996). Because LeFlore's petition appears plainly to be untimely, the court will not order the state to answer the petition at this time but will direct LeFlore to file a supplement establishing that his petition is timely or that his default should be excused.

The following facts are drawn from the petition, its attachments and the state court docket sheet related to LeFlore's criminal proceeding, which is available at https://wcca.wicourts.gov (last visited April 24, 2018).

BACKGROUND FACTS

The charges for which LeFlore was convicted arose from an alleged incident in which he broke into the apartment of JLK, forced her at knifepoint to have sex with him and stole her laptop computer. A jury found LeFlore guilty of all counts, and he was sentenced on April 25, 2008, to 40 years incarceration followed by 24 years extended supervision. On June 19, 2008, he filed a notice of intent to file postconviction relief pursuant to Wis. Stat. § 974.02, which in Wisconsin is a precursor to filing an appeal with the Wisconsin Court of Appeals. In November 2008, LeFlore's lawyer filed a motion for sentence modification, which the trial court denied on January 23, 2009.

On January 26, 2009, LeFlore's appointed lawyer sent LeFlore a letter stating that there was no meritorious basis for an appeal, and enclosing a form that advised LeFlore of his option to have the lawyer file a no-merit report. Asked to choose between having his lawyer "close [the] file without any further action" or "file a No Merit Report with the Court of Appeals," LeFlore selected the first option. (Dkt. #2, exh.2, at 15-16.) No appeal was filed and the record indicates that nothing happened on LeFlore's case for five years.

In April 2014, LeFlore filed a motion with the Wisconsin Court of Appeals to reinstate his appeal rights, arguing that his lawyer had dropped the ball in 2009 by not filing an appeal. (*Id*. at 17-19.) LeFlore asserted that he had discovered a letter in his trial lawyer's file from an expert witness whom LeFlore said would have countered one of the state's expert witnesses, but his lawyer never called the expert to testify. He further asserted that after moving unsuccessfully for sentence modification, his post-conviction lawyer "abandoned" him "without any further advice or discussion about his appeal rights or options." (*Id*. at 18). LeFlore did not provide any further details about his post-conviction lawyer's actions.

The state appellate court construed the motion as a habeas petition and told LeFlore that he needed to file a supporting memorandum by June 18, 2014 or his petition would be dismissed. (*Id*. at 22). On June 19, 2014, the court granted LeFlore's request for an extension, allowing him an additional 90 days to file a memorandum. (*Id*. at 22). On December 30, 2014, the court issued an order noting that LeFlore had never filed a

3

supplemental memorandum, but it nonetheless directed the state to respond to the petition. (*Id*. at 23.) After considering the state's response, on November 18, 2015, the court of appeals agreed with the state that LeFlore's conclusory, one-sentence assertion that his appellate lawyer "abandoned" him was insufficient to warrant an evidentiary hearing under *State v. Allen*, 2004 WI 106, ¶¶9, 36, 274 Wis. 2d 568, 682 N.W. 2d 433. (*Id*. at 31-33.) Accordingly, the court denied the petition. LeFlore later filed a petition for review with the Wisconsin Supreme Court, but it was dismissed as untimely. *Id*. at 53.

LeFlore filed the instant petition for federal habeas relief on December 12, 2016. He seeks relief on the grounds that his trial lawyer was ineffective for failing to present evidence that he says exonerates him of the sexual assault counts, and that his appellate lawyer was ineffective for failing to pursue this claim and instead abandoning him on appeal.[1] LeFlore presents two pieces of evidence that he says his lawyer knew about and which proves that he did not break into JLK's apartment and sexually assault her: (1) a DNA analysis from the Wisconsin Crime Lab (dkt. #2, at 5), which analyzed DNA from two used condoms recovered from the victim's apartment and found LeFlore's DNA on the outside of one condom, but not on the inside of either; and (2) a report from Officer Sheila Monroe stating that she had found no match for a latent fingerprint she had

---

[1] LeFlore also contends that the district attorney violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding exculpatory evidence. This claim does not make sense in light of LeFlore's claim that his trial lawyer possessed the exculpatory evidence. In the unlikely event the petition proceeds to the merits, LeFlore will need to provide more facts in support of his *Brady* claim.

4

recovered from the door handle to JLK's bedroom (*Id*. at 13). LeFlore says the DNA evidence exonerates him because JLK told police that LeFlore had used two condoms (the first one ripped) during the assault, which would mean that his DNA ought to have been on the inside of the condoms. The fact that it was on the outside of one of the condoms, he says, is consistent with his version of events, which is that he and JLK had consensual, unprotected sex. Monroe's report exonerates him, he says, because JLK told police that LeFlore opened the bedroom door to leave. If this was true, he argues, then his fingerprint would have been found on the bedroom door handle. LeFlore does not state in his petition when he learned of this evidence.

REVIEW OF THE PETITION

There are a number of problems with the petition. As an initial matter, the evidence petitioner presents falls far short of "exonerating" him, as he claims. The absence of a fingerprint match on JLK's bedroom door handle shows only that he did not leave a latent fingerprint on the door handle. It is not proof that he was not there or that JLK's story was false.

More curious is the DNA evidence, which, viewed in the light most favorable to petitioner on the very limited record before the court, could raise some questions about JLK's veracity. The report alone, however, is not the smoking gun that petitioner thinks it is. Simply because part of JLK's story may not have been true or correct does not mean that her entire report to the police was fabricated. Further, it is unclear how JLK testified

5

at trial or whether there were other witnesses who corroborated her version of events. Without more details about the evidence that was presented at trial, the most that can be said of the DNA report is that it arguably had impeachment value, which is not the same thing as establishing petitioner's innocence.

Finally, insofar as petitioner claims his appellate lawyer "abandoned" him on appeal, the petition's attachments show that petitioner was advised that he could have opted to have his lawyer file a no-merit report with the court of appeals, but he directed the lawyer to close the file without any further action. This does not jibe with petitioner's claim that his lawyer "abandoned" him.

In spite of these factual weaknesses, the court will assume for purposes of this order that petitioner has stated a plausible claim of ineffective assistance of appellate counsel for failure to bring a claim of ineffective assistance of trial counsel based on trial counsel's failure to present the DNA evidence. However, the court is unlikely to reach the merits of this claim because the petition appears to be untimely.[2]

The Antiterrorism and Effective Death Penalty Act of 1996 established a one year statute of limitations for all habeas proceedings running from certain specified dates. 28

---

[2] In addition, petitioner procedurally defaulted his claim by failing to timely file a petition for review with the Wisconsin Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("[A] prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort" has not properly exhausted the claims for purposes of 28 U.S.C. § 2254(b)(1)). Because it seems plain that the petition is untimely, the court defers consideration of procedural default at this time. Moreover, if petitioner can establish that he qualifies for the actual innocence exception, the court could excuse his default and consider the merits of his claim. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (federal court may excuse default where petitioner shows that failure to consider the claims will result in a fundamental miscarriage of justice).

U.S.C. § 2244. The one year limitation period begins to run from the latest of: 1) the date on which judgment in the state case became final by the conclusion of direct review or the expiration of the time for seeking such review; 2) the date on which any state impediment to filing the petition was removed; 3) the date on which the constitutional right asserted was first recognized by the Supreme Court, if that right was also made retroactively applicable to cases on collateral review; or 4) the date on which the factual predicate of the claims could have been discovered through the exercise of due diligence. *See* § 2244(d)(1)(A)-(D). Pursuant to 28 U.S.C. § 2244(d)(2), time is tolled, that is, it does not count against the one-year statutory period, while a properly filed application for post-conviction relief is pending in state court.

Here, the state trial court denied petitioner's motion for sentence modification on January 23, 2009, and petitioner had 20 days, until February 12, 2009, to file an appeal. Wis. Stat. § 809.30(2)(j) (party has 20 days from date of entry of post-conviction decision in which to file notice of appeal). No appeal was filed, meaning that petitioner's conviction became final on February 12, 2009. Under § 2244(d)(1)(A), he had one year from that date, or until February 12, 2010, to file his § 2254 petition. *See Farmer v. Litscher*, 303 F.3d 840, 845-46 (7th Cir. 2002) (limitations period in § 2244 begins when the time for filing a direct appeal expires). He did not file it until nearly seven years later.

Petitioner's 2014 motion for restoration of his appeal rights does not affect the federal limitations period calculation. His claim of ineffective assistance of his appellate lawyer was a collateral attack, not part of the direct review process. *See Springer v. Benik*,

134 Fed. Appx. 961, 2005 WL 1389598, *1 (7th Cir. June 7, 2005) (unpublished disposition) (petitioner's effort to reinstate appeal rights premised on claim of ineffective assistance of counsel was collateral attack, not part of direct review). Further, because his federal limitations period had already expired by the time he filed that collateral attack, he does not get the benefit of tolling under 28 U.S.C. § 2244(d)(2). *Teas v. Endicott*, 494 F.3d 580, 582–83 (7th Cir. 2007) (where time under § 2244(d)(1)(A) has long expired before filing of state postconviction petition, no collateral review "was pending" in state court and tolling provision under § 2244(d) (2) does not render petition timely); *Escamilla v. Jungwirth*, 426 F.3d 868, 870 (7th Cir. 2005) ("state court's willingness to entertain a belated collateral attack on the merits does not affect the timeliness of the federal proceeding"). Once expired, there was no longer any time to which the tolling provision could apply.

There still remain a few avenues by which the petition could be timely, however. Petitioner could present specific facts to show that a state-created impediment prevented him from filing his petition any earlier than he did, § 2244(d)(1)(B), or that his claims rest on facts that he could not have discovered earlier than he did even had he exercised due diligence. § 2244(d)(1)(D). (Petitioner is not seeking relief on the basis of a newly recognized and retroactive constitutional right, so § 2244(d)(1)(C) does not apply.) Or he could attempt to show that he is entitled to equitable tolling of the limitations period, which requires him to establish (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.

*Holland v. Florida*, 560 U.S. 631, 649 (2010); *Socha v. Boughton*, 763 F.3d 674, 684-85 (7th Cir. 2014). In light of the large time lapses during which petitioner appears to have done nothing to pursue his rights, he is unlikely to qualify for tolling under any of these scenarios.

Finally, petitioner could argue for an equitable exception to § 2244(d)(1) based on a credible claim of actual innocence, regardless whether he has been diligent in pursuing his rights. *See McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013). To qualify for this narrow exception, petitioner must "present[ ] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). Petitioner must show that "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006), quoting *Schlup*, 513 U.S. at 327; *see also McQuiggin*, 569 U.S. at 399; *Gladney v. Pollard*, 799 F.3d 889, 896 (7th Cir. 2015). To be "new," the evidence need not be "newly discovered" but must be evidence that was not presented at trial. *Gladney*, 799 F.3d at 898. Although the petitioner need not prove diligence to pass through the actual-innocence gateway, the court may consider unexplained delay "as part of the assessment whether actual innocence has been convincingly shown." *McQuiggin*, 569 U.S. at 399.

Presumably, petitioner would argue that he satisfies the actual innocence exception on the basis of the evidence that he has submitted with his petition. As discussed in the

9

beginning of this order, however, this evidence---at least on the record before the court---falls far short of showing that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  In this regard, it bears noting that in spite of arguing that the evidence "exonerates" him, petitioner has not submitted an affidavit declaring that he is innocent of the charges for which he was convicted.  Petitioner will have to make a far more convincing showing of actual innocence before the court would excuse his untimeliness and consider his claim.

Although nothing in the petition or the supporting materials suggests that petitioner can satisfy the actual innocence exception or that circumstances exist to support either statutory or equitable tolling of the limitations period, it would be premature to dismiss the petition without giving petitioner the opportunity to come forward with facts showing why the petition is timely or why his default should be excused.  Accordingly,

ORDER

IT IS ORDERED that:

Not later than May 29, 2018, petitioner shall file a supplemental brief and supporting materials setting forth facts and legal argument to show either that: (1) his petition is timely under § 2244(d); (2) he qualifies for equitable tolling; or (3) that his default should be excused under the actual innocence exception. In the event he fails to make this showing, then the presiding judge likely will dismiss the petition.

Entered this 26th day of April, 2018.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge